# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 7, 2000 Session

## STATE OF TENNESSEE v. ROBERT D. WALSH

### Appeal from the Criminal Court for Shelby County
No. 98-04576      W. Fred Axley, Judge

---

### No. W1999-01473-CCA-R3-CD - Filed January 30, 2001

---

The defendant, Robert D. Walsh, was convicted after a jury trial in the Shelby County Criminal court of the aggravated sexual battery of a foster child who was in his care. He appeals this conviction, alleging various errors in evidentiary admissions, impermissible comment on the evidence by the trial court, and improper sentencing. We modify the defendant's sentence to Range I classification and remand for correction of a clerical error in the judgment form. Otherwise, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed as Modified, Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

William D. Massey, Lorna S. McClusky, for the Appellant, Robert D. Walsh.

Paul G. Summers, Attorney General & Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; Julie Mosley, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Robert D. Walsh stands convicted of aggravated sexual battery of a foster child who lived in his home from 1994 until 1996. He received his conviction at the conclusion of a jury trial in the Shelby County Criminal Court. He was thereafter sentenced by the trial court to serve ten years at 100 percent. In this direct appeal, he raises challenges to the admission of evidence, to the trial court's alleged commentary on a defense witness's testimony, and to the trial court's determination that the offense occurred after July 1, 1995 and therefore required 100 percent sentence service. We have heard the parties' oral arguments and have reviewed the record, the briefs and the applicable law. We conclude that no error requiring reversal occurred during the defendant's trial. However, we do find error in the trial court's classification of the defendant as an

offender to which 100 percent service of sentence applies, and we therefore modify the defendant's sentence to Range I service at 30 percent. We also remand for correction of a clerical error in the date of the offense as recorded on the judgment form.

In the light most favorable to the state, the evidence at trial demonstrated the following. Around Christmas 1994, the eight-year-old victim[1] and her four-year-old sister were placed as foster children in the home of Robert and Lou Walsh. The victim was unable to provide a precise time frame, but approximately six months later, in the summertime, the defendant had a sexually oriented conversation with the victim in which he told her that it would be permissible under the Bible for him to have sexual relations with her, although it would be wrong for him to have sexual relations with an animal. In her testimony, the victim recounted that "pretty close" in time after this conversation, the defendant rubbed the victim up and down along his body until he ejaculated. The victim testified that after this incident, the defendant asked the victim to touch his private parts "[m]aybe a couple of weeks after he had first done it to me." Over time, the defendant engaged in various acts of fondling the victim, having her masturbate him, and performing oral sex on her. He attempted vaginal penetration on one occasion, anally penetrating her in the process. The victim testified that the defendant said they both would go to jail if she told anyone about the sexual acts. The defendant also told the victim that he would marry her when she was older and his wife was dead, and they would have children together.

In December 1996, the victim and her sister returned to the home of their biological mother. The victim did not report the abuse until approximately eleven months later, and an investigation commenced. During the investigation, the victim gave at least two statements implicating the defendant to child welfare and law enforcement officials.

To counter the state's evidence, the defendant presented proof aimed at showing that the victim was sexually knowledgeable beyond her years as well as untruthful. The defense attempted to highlight alleged inconsistencies between the victim's prior statements and her trial testimony. The defense also presented proof to counter various claims made by the victim, such as that she had been alone with the defendant in his bedroom, that the defendant's wife often slept on the living room sofa and not in the bed with the defendant, that the victim and the defendant were sometimes alone together, that the defendant bathed the victim, and that the victim and the defendant went swimming alone together after dark in the backyard pool.

The defendant testified and flatly denied any sexual misconduct with the victim. Three character witnesses testified on behalf of the defendant before the trial court exercised its discretion to limit further cumulative proof of this nature.

The jury considered two charges against the defendant – one count of aggravated sexual battery for a specifically-described masturbation incident and one count of rape of a child for

---

[1]It is the policy of this court to avoid use of the names of minor victims of sex crimes.

the attempted vaginal penetration that resulted in anal penetration. After deliberating, the jury returned a guilty verdict for aggravated sexual battery and a not guilty verdict for rape of a child.

At the subsequent sentencing hearing, the trial court imposed a mid-range sentence of ten years. The court found that the offense occurred after July 1, 1995, thereby mandating 100 percent service of this sentence.

The defendant then filed this appeal.

## I

The first issue we consider is whether the trial court properly admitted the testimony of social worker Carol Smith regarding a recorded statement she took from the victim and the admission of an audiotape of the interview.

On direct examination, the victim testified that she had talked with Ms. Smith after first reporting the abuse. She testified that the questions Smith asked were basically the same as the ones asked by the prosecutor at trial, and that to the best of her memory, she had answered them the same way. She acknowledged talking to other individuals, as well, and answering their questions the same way.

On cross-examination, the victim was asked several questions about a prior statement she had given to Sergeant White of the Sheriff's Department. Counsel read questions and answers to the witness and asked her whether she had given the answers reflected in the statement. The overall tenor of cross-examination was an attempt to discredit the victim by inquiry about purported inconsistencies in the details of her testimony.

Later during its case-in-chief, the state called Carol Adams of the Department of Children's Services to the stand. On a defense hearsay objection, the court conducted a jury-out hearing and determined that Ms. Smith's testimony regarding the victim's prior statements to her about the defendant's sexual abuse of the victim was admissible as prior consistent statements to rehabilitate the victim after her credibility had been attacked on cross-examination. The defense asked for a limiting instruction that the evidence could be considered "only for rebuttal and not for the truth."[2] The court agreed to give such an instruction; however, the instruction as requested was never given.

After the court ruled that Ms. Smith's testimony was admissible to rehabilitate the victim after impeachment, Ms. Smith proceeded to testify about the statement the victim gave to her, as well as the statement the victim gave to Sergeant White in Ms. Smith's presence less than a week

---

[2]Although this statement is somewhat ambiguous in itself, it is apparent upon review of the record that the defense was requesting an instruction that the limited purpose of the evidence was to show that the victim had made prior consistent statements.

later. Ms. Smith testified that the victim made corrections to a written version of one of the two statements, that the victim was consistent in both interviews, and that the victim provided a wealth of detail in her statements. On cross-examination, defense counsel asked for a copy of the tape recording of her interview with the victim. When the witness said she did not have it with her, court was recessed so that the witness could travel to her office to retrieve the tape and so that the defense could review it.

When cross-examination resumed, defense counsel inquired at length about variations between the tape and the transcription of it. The witness acknowledged that there were variances and explained that she did not herself prepare the transcribed version. Defense counsel proceeded to inquire about specific variances between the transcript and the tape itself as well as specific factual assertions of the victim in her prior statement to the witness. Counsel also inquired about the victim's statements during the interview with Sergeant White. On redirect, the state moved to introduce the tape recording of the victim's interview with Ms. Smith on the basis that the implication from cross-examination was that things had been omitted from the transcription of the tape. The defense began stating an objection to the admission of the tape but then withdrew it. However, before the tape was played for the jury, the defense objected that "there are things that weren't testified in here that's on the tape." The court overruled the objection, finding that the defense had placed the tape's contents at issue by questioning whether there were inconsistent statements of the victim on the tape. Thereafter, the tape was played for the jury.

At the conclusion of Ms. Smith's testimony, the court instructed the jury that her testimony about the statement taken by Sergeant White, the transcript of the interview from which Ms. Smith testified,[3] and the tape of the interview "are not offered for the truth of the matters contained therein, but are offered to show that such interviews and/or statements caused this witness to take further action." The defense objected to the instruction, although the precise basis of the objection is unclear from the record. The same instruction was given at the close of proof, and no further objection was made.

In his brief, the defendant has failed to cite any authority whatsoever for the position he advances regarding the admissibility of this evidence. For this reason, the issue is waived. Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

Even if the issue were properly before us, we would be unpersuaded of reversible error.

A witness's prior consistent statements are inadmissible as corroborative evidence of the witness's testimony unless there has been an impeaching attack on the witness's testimony. *State v. Meeks*, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993). When a witness's credibility has been impeached with a prior inconsistent statement, a prior statement that is consistent with her trial testimony may be used to corroborate the testimony and thereby rehabilitate her credibility. *Id.*

---

[3]The transcript itself was never admitted into evidence.

This was a case in which the victim's credibility was essential to the state's case, and for that reason, the defense mounted a strong attack. The victim was subjected to rigorous cross-examination about, among other subjects, inconsistencies between her testimony and her prior statement to Sergeant White. Once this cross-examination had taken place, the state was entitled to rehabilitate the victim's credibility by demonstrating that she had made a prior statement that was consistent with her trial testimony. *See id.* That evidence came in the form of Ms. Smith's testimony about the victim's prior statements. We see no error in the admission of Ms. Smith's testimony for the purpose of rehabilitating the victim's credibility.[4] *Cf. State v. Livingston*, 907 S.W.2d 392, 398 (Tenn. 1995) (after victim's credibility was attacked by inquiring whether she had told a different story to mother and aunt, victim's cousin's testimony about what victim told her about sexual encounters with defendant was admissible for corroboration as prior consistent statement); *State v. James Webb*, No. 02C01-9512-CC-00383, slip op. at 16-17 (Tenn. Crim. App., Jackson, Feb. 27, 1997) (DHS employee's testimony about victim's prior report of sexual abuse admissible as prior consistent statement after victim was cross-examined on issues pertaining to truthfulness of her accusation against defendant and questioning suggested sexual activity with other individuals), *perm. app. denied* (Tenn. 1997).

The question which remains is whether the audiotape of the interview with Sergeant White was properly admitted. In his cross-examination of Ms. Smith, defense counsel inquired in great detail about certain portions of the audiotape which apparently were not transcribed.[5] As part of the effort to demonstrate the victim's purported inconsistencies, defense counsel made much of

---

[4]In his brief, the defendant argues that trial counsel was under a mistaken impression that a particular portion of the prior statement was inconsistent, when in fact, it was not. Therefore, he reasons, the victim was never actually impeached. Although we question the soundness of this argument, it is unnecessary that we devote lengthy analysis to it. An attempt to impeach a witness is not required to be successful before a prior consistent statement will be admitted. Rather, what is critical is whether the attempt was made. *See State v. Daniel D. Naughton, Sr.*, No. 02C01-9612-CR-00449, slip op. at 9 (Tenn. Crim. App., Jackson, Mar. 18, 1998), *perm. app. denied* (Tenn. 1998). In this case, it is abundantly clear from the entire record that the defense theory was that the victim was not truthful in her claim of sexual abuse at the hands of the defendant and that portions of her testimony were inconsistent with her prior statements and other evidence. In closing argument, counsel went so far as to use the words "inconsistency" and "inconsistencies" in describing the victim's testimony and her prior statements and argued that the inconsistencies amounted to reasonable doubt. Because it is apparent that an *attempt* was made to impeach the victim with purported inconsistencies, her credibility was subject to rehabilitation via her prior consistent statement. *See id.*

[5]Only the audiotape is properly before this court. The transcription was not received in evidence at the trial. It was received in evidence at the motion for new trial hearing, but that exhibit was not transmitted to this court as a part of the appellate record. A document which purports to be a copy of the transcription appears in the appellate record as an attachment to a memorandum in support of the motion for new trial. However, the document which was actually received by the trial court is not before us, and as such the purported copy of the transcription is before us as an attachment to a pleading, but not as evidence. *See* Tenn. R. App. P. 24(a) (appellate record shall contain "the original of any exhibits filed in the trial court"); *State v. Marvin Kale Ferguson*, No. 03C01-9406-CR-00234, slip op. at 6 (Tenn. Crim. App., Knoxville, July 12, 1995) (exhibits to a pleading are not evidence of facts contained therein), *perm. app. denied* (Tenn. 1995).

some matters which were on the tape but not part of the transcription.[6] The mode of counsel's questioning suggested that the transcription was incomplete and somehow misleading. While we do not appreciate the relevance that defense counsel apparently believed existed in the differences between the transcript and the tape of Ms. Smith's interview with the victim,[7] we nevertheless decline to find error in the tape's admission.

The tape of the interview Ms. Smith conducted with the victim was a prior consistent statement of the victim. As such, it qualified for admission for rehabilitative purposes just as Ms. Smith's testimony did. *See State v. Belser*, 945 S.W.2d 776, 786-87 (Tenn. Crim. App. 1996) (tape of defendant's prior consistent statement admissible to rehabilitate his trial testimony after he was impeached on cross-examination with excerpts from prior statements). Additionally, at times counsel's cross-examination about variances between the transcription and the taped statement itself as well as his questioning about particulars of the victim's prior statement took portions of her statement out of their overall context.[8] This court has said that when cross-examination about a prior statement tends to distort the meaning of the statement, the portions of the statement necessary to place the excerpts in context may be introduced. *See State v. Boyd*, 797 S.W.2d 589, 593-94 (Tenn. 1990) ("Where specific questions and answers taken out of context do not convey the true picture of the prior statement alleged to be inconsistent, it is unfair to permit reference to isolated, unexplained responses by the witness and there is no error in allowing the statements to be placed in context."). The statement was properly admitted for rehabilitative purposes and to place excerpted portions of the victim's prior statement into overall context.

The final aspect of this issue pertains to the limiting instruction given by the trial court. As discussed above, the proper instruction would have been that evidence of the victim's prior consistent statements could not be considered as evidence of the matters asserted therein but could be considered in evaluating the victim's credibility. *See State v. Livingston*, 907 S.W.2d 392, 395 (Tenn. 1995) (child sex abuse victim's prior statement admissible as corroborative evidence if it satisfies prior consistent statement rule, admissible as substantive evidence if it satisfies a hearsay exception). Unfortunately, that instruction was not given. The court did properly instruct the jury that it could not consider the victim's prior statements as substantive evidence. *See id.* However, it erroneously instructed the jury that the statements were admitted to show what caused Ms. Smith

---

[6] Obviously, the victim is not responsible for any variance between the transcript and tape. However, the manner in which counsel presented the absences from the transcript highlighted purported inconsistencies. For example, the victim testified that she wore a one-piece bathing suit and that she was not allowed to wear a two-piece bathing suit. The transcription was consistent. However, counsel's questioning of Ms. Smith suggested that the victim had first said in her statement that she wore a two-piece bathing suit but then said she wore a one-piece bathing suit.

[7] We have considered the possibility that the witness had the transcription before her and referred to it extensively during her testimony. However, whether this happened is not evident upon the record before us.

[8] Defense counsel laboriously cross-examined Ms. Smith about particulars of the statement. It appears that at times, defense counsel's questioning tended to confuse the witness because counsel asked questions in succession which dealt with unrelated aspects of the victim's prior statement. This mode of cross-examination obfuscated the rehabilitative nature of the witness's testimony on direct about the victim's prior statement.

to take further action.  We hold that this error was entirely harmless to the defendant.  The jury was told not to consider the evidence substantively.  Moreover, the proper use of the evidence, rehabilitating the victim's credibility, benefitted the state.  By the improper portion of the instruction, only the state, not the defendant, stood to suffer harm.  Furthermore, we are at a loss to fathom any harm that the defendant would suffer from considering this evidence as demonstrating what caused Ms. Smith to take further action.[9]

## II

The defendant raises four evidentiary issues which he acknowledges are cognizable only as plain error.

As a general proposition, consideration of issues which are not raised in the trial court proceedings is waived on appeal.  *See* Tenn. R. App. P. 3(e), 36(a); *State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).  However, if the error is such that it affects a substantial right and is so egregious that it strikes at the "fairness, integrity, or public reputation of judicial proceedings," it may be recognized as plain error.  *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994); *see also* Tenn. R. Crim. P. 52(b).

The Tennessee Supreme Court has recently adopted this court's standard for evaluating whether an alleged error is proper for notice as plain error:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42).  In *Smith*, the supreme court emphasized that "all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established."  *Id*., 24 S.W.3d at 283.

### A.

_____

[9] The defendant claims that by instructing that the evidence was admitted to show why Ms. Smith took further action, the trial court was conferring reliability and credibility on the statement because the jury might infer that Ms. Smith believed the statement and therefore acted upon it.  Assuming arguendo that the jury's thought process is as the defendant posits, we still see no harm.  If the jury had been properly instructed, it would have considered the evidence as rehabilitative of the victim's credibility.  If the jury used the evidence as theorized by the defense, it would be assuming *the victim was credible* and therefore Ms. Smith took further action.  Either way, the net result would be the same.

In the first plain error issue, the defendant attacks the trial court's admission, absent objection, of the victim's testimony about the time frame of the offense. He claims that the victim was an incompetent witness who lacked personal knowledge of the facts to which she testified. Specifically, he attacks her testimony because she responded in part to the state's questioning about the time frame with phrases such as "I think," "I guess," "I don't really remember," and "I really couldn't tell you." The defendant goes on to complain that the state's leading questioning of the victim in view of her inability to recall the time frame with precision suggested the desired answers to the victim.

We focus first on the *Adkisson* requirement that a clear and equivocal rule of law much have been breached before plain error will be noticed. The defendant posits that the clear and unequivocal rule of law breached here is that a witness must testify from personal knowledge. *See* Tenn. R. Evid. 602. The defendant has failed to convince us, however, that the victim's testimony was not based upon her own personal knowledge. Obviously, the victim perceived the sexual abuse she suffered at the hands of the defendant with her own senses. *See State v. Boling*, 840 S.W.2d 944, 949 (Tenn. Crim. App. 1992) (witness is incompetent unless he has knowledge of the facts through one or more of his five senses; victim who claimed no recollection of crime met personal knowledge test). The extent to which her testimony was ambiguous is relevant to the weight to be afforded her testimony, not its admissibility. *See State v. Robinson*, 971 S.W.2d 30, 44-45 (Tenn. Crim. App. 1997) (ambiguity in witness's identification of defendant was matter to be considered by jury in weighing evidence, rather than a question of admissibility based upon lack of personal knowledge).

With respect to the leading question component of the defendant's complaint, this court has long recognized the discretion afforded a trial court in allowing leading examination of minor victims of sex crimes. *See, e.g., Swafford v. State*, 529 S.W.2d 748, 749 (Tenn. Crim. App. 1975).

Because we are unconvinced that a clear and unequivocal rule of law was breached in this case, plain error analysis must fail. *See Smith*, 24 S.W.3d at 282-83.

**B.**

In a similar vein, the defendant challenges as plain error the admission, absent objection, of the victim's testimony that she feared for the safety of other foster children in the defendant's care. The defendant complains that this evidence was irrelevant and unfairly prejudicial and that the victim lacked personal knowledge of the presence of other foster children in the defendant's home.

The victim testified on direct examination about the presence of other female foster children in the defendant's home and about her concern for them in the context of explaining her reasons for eventually coming forward with her accusation against the defendant. Thus, the evidence appears at least marginally relevant. The victim's testimony does not demonstrate lack of personal knowledge; at most, it is ambiguous whether she had personal knowledge that foster children lived

with the defendant.[10] Finally, the defendant has cited no decisional authority to support a conclusion that the evidence was *unfairly* prejudicial, and we are unconvinced that it was so.[11]

For these reasons, the defendant has failed to persuade us that any clear and unequivocal rule of law has been breached. *See Adkisson*, 899 S.W.2d at 641. Plain error analysis is therefore inappropriate. *See Smith*, 24 S.W.3d at 282-83.

## C.

The defendant also alleges plain error in allowing the state to question the defendant's wife whether she knew that the defendant had asked the victim to fellate him. The defendant's argument falls far short of the mark in convincing this court that this questioning amounted to plain error. Most significantly, the defendant has cited no authority whatsoever for the proposition that this questioning was improper. As such, he has failed to demonstrate the breach of any clear and unequivocal rule of law. *See Adkisson*, 899 S.W.2d at 641. Likewise, he has thereby failed to identify any substantial right which has been breached. *See id.* Therefore, we decline to address this allegation as a matter of plain error. *See Smith*, 24 S.W.3d at 282-83.

## D.

The defendant's fourth and final plain error allegation pertaining to evidentiary matters is that the court improperly allowed the victim's sister to testify to matters which had no purpose other than to bolster the victim's testimony. The defendant complains that the victim's sister was allowed to testify that she had been told by the victim what the defendant had done to the victim, that she was present during a "skinny dipping" discussion with the defendant, and that the victim was believable. The defendant claims that the victim's sister thus had no relevant or material testimony to offer and that she merely provided the state with an "opportunity to place before the jury an eight year old girl who, as the sister of the alleged victim, might provide a graphic picture of the alleged victim at age eight . . . ."

The victim's younger sister was asked near the beginning of her testimony if the victim had told her about what happened to the victim, but no hearsay specifics were elicited. This query served to establish that the witness had some basic knowledge of the matter on trial. Further,

---

[10]Other evidence of record supports a conclusion that at least one of the other foster children was placed in the defendant's home before the victim and her sister returned to their mother's care. Further, after the victim and her sister returned to their mother, there were various visits and contacts between the victim and the defendant at which other members of the defendant's household were present. The last such contact was shortly before the victim first reported the abuse, and according to the defendant's wife's testimony, two of the foster children were present for this contact.

[11]The defendant claims that the state's motive in eliciting this evidence "seems to have been to invite the jury to speculate about the safety of these unidentified children by suggesting that the defendant was a dangerous child molester at large in the community." The defendant does not make an attempt to substantiate this assertion with citation to any portion of closing argument or other portions of the trial record which would lend any credence to this alleged motive.

-9-

the next question asked was whether the defendant had done the same things to the witness, to which the witness replied he had not. Despite the defendant's claim that this was impermissible bolstering, we fail to see evidentiary error in this context.

The victim's sister also testified briefly about a "skinny dipping" discussion that took place when the defendant, the victim and the witness were in the backyard swimming pool one evening. On direct examination, the victim testified about sexual misconduct and skinny dipping that took place when she and the victim were in the pool alone together. She was vigorously cross-examined about when the wading and swimming pools that the defendant and his wife had in the back yard were obtained and in use, the times of day at which the swimming pool was used, and the lighting and degree of privacy in the back yard. She was also asked whether her sister was present during the incidents in the pool, and she stated in response that her sister was usually inside with Mrs. Walsh; however, her sister had stated that she recalled being present on one occasion when the defendant asked the victim to remove her bathing suit. When the victim's sister was called to the stand, she was asked about this and recounted a discussion during an evening swim with the victim and the defendant in which the defendant said something about skinny dipping and then explained what it was when the witness asked him.

Again, the defendant claims this was improper bolstering. We view it differently. First of all, "bolstering" generally refers to the situation in which the state offers a prior consistent statement of the victim to enhance the credibility of her testimony at trial. *See, e.g., State v. Hodge*, 989 S.W.2d 717, 725 (Tenn. Crim. App. 1998). While bolstering is allowed in limited circumstances, *see id.*, the victim's sister's testimony did not encompass a prior consistent statement, so a bolstering analysis is inapposite.

Rather, this is a situation in which the state properly offered corroborative evidence. Through the victim, the state offered evidence of sexual misconduct in the swimming pool.[12] The defense challenged various particulars of the victim's claim through brisk cross-examination. The state then offered the victim's sister's testimony that she was present during an evening swim in which the defendant discussed skinny dipping. The evidence was relevant and proper.

The defendant also quarrels with the admission of the victim's sister's testimony that her sister was believable. The defense engaged in a searching cross-examination of this witness

---

[12]Although this evidence of sexual misconduct was not the basis of the offense for which the defendant was ultimately convicted, it was presented prior to the state's election of offenses upon which it sought conviction. *See generally State v. Rickman*, 876 S.W.2d 824 (Tenn. 1994) (in case in which charge spans a period of time, state may offer evidence of multiple sex crimes allegedly occurring during time frame of indictment so long as it ultimately elects at close of its proof-in-chief the specific incident upon which it seeks conviction). For sex crimes committed by a defendant within the time span of an indictment, *Rickman* is a limited exception to the general rule of inadmissibility of a defendant's other crimes, wrongs or acts of Tennessee Rule of Evidence 404(b). *Id.* at 829.

which spans approximately 22 pages of the transcript.[13] Near the end of this probe, counsel asked, "[D]id you ever see him ever [sic] do a bad touch? That you ever saw yourself? Not what somebody told you?" The witness responded, "No, sir. I don't – I don't – I never saw him, but I can believe [the victim]."

Again, this testimony did not qualify as bolstering. *See id.* Moreover, we do not see how this response to cross-examination, the general tenor of which had been to very thoroughly question the witness about all aspects of her direct examination testimony, prejudiced the defendant. Additionally, in the context in which this statement was made, it was not improper character evidence. *See* Tenn. R. Evid. 608.

Finally, we are compelled to comment that the defense has failed to substantiate its claim that the state only offered this witness to inflame the prejudices and sympathies of the jury.

Because we see no error in the admission of the victim's sister's testimony, no clear and unequivocal rule of law has been breached. *See Adkisson*, 899 S.W.2d at 641. Moreover, no substantial right of the defendant has been affected. *See id.* Plain error analysis is therefore inappropriate. *See Smith*, 24 S.W.3d at 282-83.

### III

Next, the defendant challenges a statement made by the court after the testimony of the defendant's wife as an unfair comment on her testimony. The defendant concedes that there was no objection at trial but urges us to grant relief as a matter of plain error.

As the defendant correctly argues, article VI, section 9 of the Tennessee Constitution declares that trial judges "shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

In this case, the trial court's statement in question came at the end of the day, just before court was recessed for the evening. The defendant's wife had been excused from the stand, six exhibits had been passed to and viewed by the jury, and a brief bench conference had transpired. The court then said, "Good enough. It's quitting time. I want you back in here in the morning. See you're a good jury. You listen to everything. Whether it's real or not." The court then went on to instruct the jury when to return and gave the usual admonitions about not discussing the case and reporting any irregularities to the court.

In these circumstances, we are unpersuaded that the court's statement was a comment on the credibility of the defendant's wife, the last witness of the day. Moreover, even if it were, the law does not require that every comment by a judge that is deemed improper result in a reversal. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate

---

[13] Direct examination is covered in five pages of the transcript.

shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

For these reasons, the defendant has not convinced us that a clear and unequivocal rule of law was breached or that a substantial right was affected. *See Adkisson*, 899 S.W.2d at 641. Plain error review is not appropriate. *See Smith*, 24 S.W.3d at 282-83.

**IV**

Finally, we consider whether the defendant was properly sentenced to 100 percent service of his ten-year sentence, rather than 30 percent as a Range I offender.

Tennessee law provides that certain offenses, including aggravated sexual battery, which were committed on or after July 1, 1995, require 100 percent service of the resulting sentences, with no more than fifteen percent reduction for sentence credits earned and retained. Tenn. Code Ann. § 40-35-501(i)(1), (2) (Supp. 2000). For offenses committed prior to July 1, 1995, no such provision existed, and therefore, the release eligibility percentage would be determined by the usual Range classification system established by the Criminal Code. *See generally* Tenn. Code Ann. § 40-35-105 to -108 (1997). For a Range I offender, the release eligibility percentage is 30 percent less sentence reduction credits earned and retained. Tenn. Code Ann. § 40-35-501(c) (Supp. 2000). The question here is whether the offense occurred prior to or following the effective date of section 40-35-501(i).

At the defendant's sentencing hearing, the trial court found that the defendant's offense was committed after the 100 percent provision took effect. The defendant disagrees. Resolution of the issue turns entirely upon the facts presented at trial.

In determining factual matters relative to sentencing a defendant, the standard of proof for the trial court is by preponderance of the evidence. *See State Dennis E. Bondon*, No. 02C01-9809-CR-00280, slip op. at 3 (Tenn. Crim. App., Jackson, Dec. 13, 1999) (noting that trial court found facts relative to sentencing by preponderance of the evidence); *State v. Jeffrey Lynn Cameron*, No. 03C01-9410-CR-00390, slip op. at 6 (Tenn. Crim. App., Knoxville, Apr. 15, 1996) (on *de novo* review, preponderance of evidence did not support application of a specified enhancement factor). On appeal, the reviewing court must indulge a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, the presumption of correctness does not apply (1) to determinations made where the record fails to reveal that the trial court considered the sentencing principles and all relevant facts and circumstances; (2) to the trial court's legal conclusions; and (3) to determinations which are predicated upon uncontroverted facts or documentary evidence. *See, e.g., State v. Smith*, 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994). On appeal, "[t]he burden of showing that the sentence is improper is on the appellant." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the facts themselves are not in dispute. There is not conflicting evidence to be resolved regarding whether the offense occurred on or after July 1, 1995, such as where one witness testifies that the offense occurred prior to that date and another testifies that it occurred later. Rather, the task of the trial court in this case was to consider whether all of the evidence supported a conclusion that the offense occurred on or after the effective date of the 100 percent service statute. Because the trial court's determination was predicated upon interpretation of uncontroverted facts, our review is *de novo*. *See Smith*, 898 S.W.2d at 745; *cf. State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999) (issues involving mixed questions of law and fact are reviewed *de novo* on appeal).

The defendant was charged with aggravated sexual battery of the victim occurring between December 16, 1994 and December 20, 1996. When the state made its election, it did so by specifying an instance of sexual contact without using a time period as part of the description of the occurrence elected. At trial, the victim testified that she and her sister moved in the defendant's home around Christmas. The proof established that this was in 1994. The victim testified that about six months later in the summertime, the defendant began talking to her about sex and the Bible. This was the first thing that the defendant did that made the victim uncomfortable. Incidents of sexual contact followed. The first such incident that the victim recalled in her trial testimony was when the defendant rubbed the victim against his genitals. Although the victim could not pinpoint a precise time when the first physical contact occurred, she said that it was "[p]retty close" to the conversation about the Bible. The victim then recounted a variety of sexual acts to which she was subjected by the defendant, which included fifteen to twenty similar incidents of body rubbing, as well as acts of cunnilingus, multiple acts of digital fondling, attempted vaginal penetration, and anal penetration. The victim also recounted that the defendant asked her to touch his private parts and had guided her in masturbating him. She said that this occurred "[m]aybe a couple of weeks after he had first done it to me."

Relative to the date of the offense, the court found at the sentencing hearing, "Body rubbing began before July 1, 1995. Masturbation occurred after. It's in the transcript."

Upon *de novo* review, we are persuaded that the trial court's finding that the offense occurred on or after July 1, 1995 is unsupported by a preponderance of the evidence. This finding is speculative, at best. The victim's testimony places the Biblical sex conversations in June of 1995. Sexual contact began "[p]retty close" to these conversations. While it is certain that the incident of aggravated sexual battery prosecuted in this case occurred after the Biblical sex conversations, nothing in the record places the incident in chronological context with other acts of sexual abuse such that it may be concluded with precision that the offense occurred after July 1, 1995.[14] Specifically, it is not clear from the record to which of the various acts of sexual abuse the victim was referring as the one in which the defendant "had first done it to" her which was shortly followed

---

[14]The state essentially reads the victim's testimony as a sequential narration of the various acts of sexual misconduct. While a reading in this manner would come closer to supporting a finding by a preponderance of the evidence that the offense occurred on or after July 1, 1995, we disagree that the victim's testimony was a sequential narration.

-13-

by the offense on trial. One might conclude that the victim was referring to the first time the defendant engaged in "body rubbing." Equally, one might conclude that the victim was referring to the allegation of attempted vaginal penetration that resulted in anal penetration or to the first incident of digital fondling.

With the record demonstrating that the defendant is a Range I offender, we must modify the trial court's imposition of 100 percent service of sentence to 30 percent service.

Finally, we have discerned an error in the judgment form which requires correction. *See* Tenn. R. Crim. P. 36 (clerical mistakes in judgments are correctable at any time). The judgment reflects that the offense occurred "between 12-16-96 & 12-20-96." The defendant was charged with aggravated sexual battery occurring between December 16, 199**4** and December 20, 1996.

For these reasons, we modify the defendant's sentence to Range I classification and remand for entry of a judgment which reflect's this court's modification as well for as correction of the clerical error in the date of the offense. In all other respects, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE